IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CITY OF AUSTIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| GREG ABBOTT, *Texas Governor in his official* | § | 1:17-CV-806-RP |
| *capacity*; KEN PAXTON, *Texas Attorney General* | § | |
| *in his official capacity*; NEW CINGULAR | § | |
| WIRLESS PCS, LLC; T-MOBILE WEST | § | |
| LLC; CROWN CASTLE NG CENTRAL | § | |
| LLC; EXTENET SYSTEMS, INC.; and | § | |
| MOBILITIE LLC; | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are several motions to dismiss filed by Defendant New Cingular Wireless ("New Cingular"), (Dkt. 35), Defendant ExteNet Systems, Inc. ("ExteNet"), (Dkt. 36), Defendants Greg Abbott (the "Governor") and Ken Paxton (the "attorney general"),[1] (Dkt. 37), Defendant Mobilitie LLC ("Mobilitie"), (Dkt. 38), Defendant T-Mobile West LLC ("T-Mobile"), (Dkt. 39), and Defendant Crown Castle NG Central LLC ("Crown Castle"), (Dkt. 42). Given the similarities between the motions and the arguments made by the Defendants, the Court will consider them and the arguments they raise collectively. Having considered the parties' briefs, the evidence, and the relevant law, the Court issues the following order.

## I. BACKGROUND

In November 2017, the governor signed SB 1004.[2] SB 1004 imposes certain standards on the process for permitting telecommunications companies to install "small cell nodes" on utility poles, traffic lights, or street signals in the public right of way ("ROW"). *See* Tex. Loc. Gov't Code

---

[1] The governor and the attorney general are referred to collectively as the "State Defendants."

[2] SB 1004 is codified as Chapter 284 of the Texas Local Government Code. Tex. Loc. Gov't Code § 284.001 *et seq.*

§ 284.001(a)(1), (5), (8)–(10). These small cell nodes provide the capacity to reliably serve large crowds, and they will eventually serve as a foundation for developing a 5G network. Before SB 1004, the State did not limit the fees municipalities could charge for issuing permits to install and use small cell nodes in their ROW or the time within which a city must process permit applications. SB 1004 places two temporal restrictions on the permit application process: a prohibition of "moratoria"—a period during which a municipality will not issue permits—and a "shot clock"—a specified time period within which an application must be reviewed.

Plaintiff the City of Austin (the "City") sued the State of Texas and the governor seeking an injunction that would prevent the implementation of SB 1004. (*See* Compl., Dkt. 1). The City argued that SB 1004 is pre-empted by Sections 253(c) and 332(c)(7) of the Federal Telecommunications Act ("FTA"). (Compl., Dkt. 1, ¶¶ 35–38). The City moved for a preliminary injunction, which the Court denied because it concluded that the City was unlikely to succeed on its pre-emption claims.[3] (Order, Dkt. 12). The City then amended its complaint to add parties as defendants, including several telecommunications companies and the attorney general, and abandon one of its claims. (Am. Compl., Dkt. 22). Each Defendant has moved to dismiss the City's complaint. (Dkts. 35, 36, 37, 38, 39, 42).

## II. LEGAL STANDARD

### A.  Rule 12(b)(1)

Under Rule 12(b)(1), a court may dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks "the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). There are

---

[3] In the order denying the City's preliminary injunction, the Court addressed many similar arguments raised in the Defendants' motions to dismiss. (*See* Order, Dkt. 12). To avoid repetition, the Court references that order here where appropriate, and refers the parties to its earlier order where necessary.

three avenues for a movant to demonstrate a lack of jurisdiction: (1) on the face of the complaint alone; (2) the complaint supplemented by undisputed facts in the record; and (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts. *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). The party invoking the court's jurisdiction bears the burden of demonstrating that jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Where a jurisdictional challenge is raised, the court is generally "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Montez*, 392 F.3d at 149. The court should grant a 12(b)(1) motion to dismiss only if it appears certain that the plaintiff cannot prove any set of facts that would entitle her to recovery. *Morris v. Thompson*, 852 F.3d 416, 419 (5th Cir. 2017). Where a state's sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity must be dismissed only under Rule 12(b)(1) and not with prejudice. *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 343 (5th Cir. 1996). Dismissal under 12(b)(1) is not a determination on the merits and does not prevent a plaintiff from pursuing a claim in a court with proper jurisdiction. *Ramming*, 281 F.3d at 161.

## B. Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the [plaintiffs'] grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). Because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Id.*

## III. DISCUSSION

Defendants challenge this Court's jurisdiction and the City's standing to sue. The State Defendants also continue to argue, as they did at the preliminary injunction stage, that the State is not subject to suit under *Ex parte Young*, 209 U.S. 123 (1908), because an appropriate State official has not been sued, as neither the governor nor the attorney general possess "the ability or the demonstrated willingness to enforce the challenged law." (State Defs.' Mot. Dismiss, Dkt. 37, at 2). Finally, each Defendant argues that the City fails to state a claim because the statutes identified by the City do not pre-empt SB 1004. The Court first addresses the jurisdictional arguments before deciding whether the City has stated a claim. *See Ramming*, 281 F.3d at 161.

## A.   12(b)(1): Standing & Jurisdiction

### 1.   Jurisdiction

ExteNet argues that the City does not have a private cause of action under the Supremacy Clause to assert a pre-emption claim against Defendants. (ExteNet Mot. Dismiss, Dkt. 36, at 3–4). It argues that, while "in certain situations parties are able to invoke the court's equity powers to enjoin unconstitutional actions by state officers," those circumstances are not present here, as the State has not threatened to take any action against the City. (*Id.* at 4). The Court disagrees.

The Supreme Court has noted that it often exercises jurisdiction over claims seeking to enjoin state laws that are pre-empted by federal statute. *See Shaw v. Delta Airlines*, 463 U.S. 85, 96 n.14 (1983) (noting that "[i]t is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights"). In *Shaw v. Delta Airlines*, the Court relied on its landmark holding in *Ex parte Young*, 209 U.S. 123 (1908), to hold that a plaintiff seeking injunctive relief from a state regulation on the grounds that the regulation is pre-empted by federal statute presents a federal question which the federal courts have jurisdiction to resolve. 463 U.S. at 96 n.14. Two years later, the Court further noted that "the availability of prospective relief of the sort awarded in *Ex parte Young* gives life to the Supremacy Clause. Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law." *Green v. Mansour*, 474 U.S. 64, 68 (1985). The Fifth Circuit has applied *Shaw* to hold that federal question jurisdiction exists over claims that state laws and regulations are pre-empted by federal law. *See Gillis v. Louisiana*, 294 F.3d 755, 760 (5th Cir. 2002); *Self-Ins. Inst. of Am., Inc. v. Korioth*, 993 F.2d 479 (5th Cir. 1993).

Indeed, in a case similar to this one, the Supreme Court held that 28 U.S.C. § 1331 provided federal question jurisdiction over the federal pre-emption claim even though the FTA did not give the plaintiff a private cause of action. *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635

(2002). In *Verizon Maryland Inc. v. Public Service Commission of Maryland*, a telecommunications carrier challenged a state utility commission order as pre-empted by the FTA. *Id.* at 642. The Court held that even though the FTA did not create a private cause of action to challenge a state agency's order, the district court still had jurisdiction. *Id.* at 642–43 (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 89 (1998)). As a result, the Court here has jurisdiction over the City's pre-emption claims.

ExteNet argues that the Supreme Court held in *Armstrong v. Exceptional Child Ctr., Inc.* that the Supremacy Clause is not the source of any federal rights and does not create a cause of action. (*See* ExteNet Mot. Dismiss, Dkt. 36, at 3–4 (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1383 (2015)). But the Fifth Circuit recently rejected this reading of *Armstrong*, finding that "[d]espite . . . assertions to the contrary, *Armstrong* does not modify *Shaw*'s clear language." *Air Evac EMS, Inc. v. Tex., Dep't. of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 515 (5th Cir. 2017). Instead, the Fifth Circuit found that *Armstrong* "reaffirmed that plaintiffs seeking injunctive relief against state officers must satisfy *Ex parte Young*'s equitable exception." *Id.* (citations omitted). And the court held that *Armstrong* required a plaintiff to "proceed under *Ex parte Young*, if at all; but, it does not contradict *Shaw*'s plain grant of federal-question jurisdiction under Article III and 28 U.S.C. § 1331." *Id.* In short, § 1331 provides the Court with jurisdiction[1] over the City's pre-emption claim so long as the City can satisfy *Ex parte Young*'s equitable exception.

---

[1] T-Mobile and Mobilitie similarly challenge the Court's jurisdiction. T-Mobile contends that the claims against it should be dismissed for lack of subject matter jurisdiction because the suit asks the Court to adjudicate an anticipatory federal pre-emption defense that could be raised should T-Mobile seek to enforce SB 1004 in the future, and the claim cannot support federal jurisdiction on this basis. (T-Mobile Mot. Dismiss, Dkt. 39, at 18–20). Separately, Mobilitie argues that, as a private entity, it is not a proper party because it lacks the authority to enforce SB 1004. (Mobilitie Mot. Dismiss, Dkt. 38, at 4). Both T-Mobile and Mobilitie have filed applications with the City of Austin for permits to install small cell nodes in Austin's ROW, so both have an interest in whether SB 1004 limits the City's permitting fees and the time within which the City must respond to their applications. This interest is sufficient to grant the Court jurisdiction over the City's claim against them. *See Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. at 643–45; *Verizon Md Inc. v. RCN Telecom Servs., Inc.*, 232 F.Supp.2d 539, 554 (D. Md. 2002) (private local exchange carriers were properly added as defendants to suit challenging state commission order).

2.  *Ex Parte Young*

The State Defendants contend that sovereign immunity bars the City's claims against them. (State Def.'s Mot. Dismiss, Dkt. 37, at 7–9). As explained in the Court's order on the preliminary injunction motion, (Order, Dkt. 12, at 3), "the Constitution does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000). In *Ex parte Young*, however, the Supreme Court recognized an equitable exception to Eleventh Amendment immunity for suits seeking prospective injunctive relief against a state official charged with enforcing state law. *Ex parte Young*, 209 U.S. 123, 159-60 (1908); *see also Morris v. Livingston*, 739 F.3d 740 (5th Cir. 2014). "[T]he important and material fact" is whether "the state officer, by virtue of his office, has some connection with the enforcement of the act," and that "whether [this connection] arises out of the general law, or is specially created by the act itself, is not material so long as it exists." *Ex Parte Young*, 209 U.S. at 157; *see also Okpalobi v. Foster*, 244 F.3d 405, 415 (5th Cir. 2001) (en banc).[4] The "connection" requirement is designed to ensure that a defendant is not sued only to make the state a party. *Young*, 209 U.S. at 157. In determining whether *Ex parte Young* allows a plaintiff to avoid Eleventh Amendment immunity, the court need only conduct a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. at 645 (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in judgment)).

The State Defendants contend that neither the governor nor the attorney general have the requisite connection to SB 1004 to allow them to be sued under *Ex parte Young*. (State Defs.' Mot.

---

[4] The State relies in part on the Fifth Circuit's en banc decision in *Okpalobi*, where the plurality opinion held that there must be a "special relation" or "close connection" between a state official and a challenged statute. *Okpalobi*, 244 F.3d at 413–19. However, the plurality opinion's "treatment of *Ex parte Young* and the Eleventh Amendment [wa]s not supported by a majority of the court." *Id.* at 429 n.1 (Higginbotham, J., concurring); *see also id.* at 415 (Parker, J., dissenting); *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) ("Because that part of the en banc opinion did not garner majority support, the Eleventh Amendment analysis is not binding precedent."). Accordingly, the Court analyzes whether the attorney general is a proper defendant under *Ex parte Young* itself rather than through the lens of *Okpalobi*.

Dismiss, Dkt. 37, at 7). The State already made this argument at the preliminary injunction stage, when the governor was named as a defendant. (*See* Abbott Mot. Dismiss, Dkt. 9). There, the Court found that even if the governor was not a proper defendant, the solution was to substitute the proper State official as a defendant, not dismissal. (Order, Dkt.12 at 4). And—because the State's counsel was reluctant to respond when asked who the correct defendant was—the Court expressed the view that "[a] likely candidate here is the attorney general." (*Id.*). The City subsequently amended its complaint, dropped the State as a defendant, and added the attorney general to this action.

Though the State concedes that the attorney general has a duty to enforce and uphold the laws of Texas, it nevertheless argues that he has an insufficient connection to SB 1004 to allow him to be a proper defendant under *Ex Parte Young.* (*See* State Defs.' Mot. Dismiss, Dkt. 37, at 8–9). The State Defendants contend that "the Fifth Circuit rejected the argument that the 'Attorney General's state constitutional duty to enforce all laws of the state is sufficient to satisfy the requirements of *Ex parte Young.*'" (*Id.* (quoting *Hamilton v. Foti*, 372 F. App'x 480, 486 (5th Cir. 2010))). Like it did at the preliminary injunction hearing, the State does not identify who the correct state official would be in a suit challenging SB 1004, intimating that no one in state government has the responsibility to enforce the statute. (*See* State Defs.' Mot. Dismiss, Dkt. 37, at 8 n.4). In response, the City argues that the attorney general has a sufficient connection to the law to allow him to be sued, as shown by the attorney general's pattern of repeatedly suing the City to enforce state law over City ordinances, regulations, and policies. (*See* Resp. Defs.' Mot. Dismiss, Dkt. 48, at 3–4).

The Court finds that the attorney general is a properly named defendant.[5] The attorney general has repeatedly sought to invalidate the City's ordinances and regulations based on the supremacy of State statutes, often in this Court. *See City of Austin v. Paxton*, 325 F.Supp. 3d 749, 755 (W.D. Tex. 2018) (citing *Texas, et al. v. Travis Cty., Tex.*, 272 F.Supp.3d 973 (W.D. Tex. 2017)) (suit by

---

[5] Having found that the City has named a proper State official through the inclusion of the attorney general as a defendant, the Court will refrain from determining whether the governor is a proper defendant under *Ex parte Young.*

Texas and the attorney general against the City of Austin to enforce the supremacy of legislatively enacted general laws over local ordinances as established by the Texas Constitution). As the City observes, the State has also recently sued the City to pre-emptively enforce Senate Bill No. 4,[6] invalidate the City's short-term rental regulations,[7] invalidate the City's collective bargaining agreement with its firefighters,[8] and invalidate the City's restriction on firearms in City Hall.[9] In each case, the attorney general sued to enforce state constitutional provisions he contended pre-empted the City's ordinances. While the attorney general contends that his connection to SB 1004 is insufficiently close to allow him to be named here, he has often argued the opposite. For example, in the suit seeking to invalidate the City's short-term rental regulations, he represented that:

> The State of Texas has standing as an intervenor not only through the Uniform Declaratory Judgments Act, which specifically states that the State of Texas through the Attorney General is "entitled to be heard" "[i]n any proceeding that involves the validity of a municipal ordinance . . . alleged to be unconstitutional," Tex. Civ. Prac. & Rem. Code § 37.006(b), but also through its *freestanding sovereign interest in enforcing the Texas Constitution.*

Appellant's Br., *Zaatari, et al. v. City of Austin, et al.*, No. 03-17-00812-cv, 2018 WL 1718098, at *9–10 (Tex. App.—Austin Mar. 29, 2018) (emphasis added).

Here too, the attorney general might bring a similar enforcement proceeding against the City arguing the supremacy of SB 1004 over the City's permitting process. Accordingly, the attorney general bears "some connection" to enforcement of the statute, and so he qualifies as a proper defendant under *Ex parte Young*. The Court thus rejects the argument that the claims against the attorney general be dismissed.

---

[6] Order Granting City's Motion to Dismiss, *Texas, et al. v. Travis Cty., et al.*, No. 1:17-cv-425-SS (W.D. Tex. Aug. 9, 2017) (Dkt. 74).

[7] Order Granting City's Motion for Summary Judgment, *Zaatari, et al. v. City of Austin, et al.*, No. D-1-GN-16-002620 (53rd Dist. Ct., Travis County, Tex. Nov. 21, 2017).

[8] Texas Plea in Intervention, *Pulliam, et al. v. City of Austin, et al.*, No. D-Q-GN-16-004307 (419th Dist. Ct., Travis County, Tex. Oct. 18, 2016).

[9] Order Granting City's Plea to Jurisdiction, *Paxton v. City of Austin, et al.*, No. D-1-GN-16-003340 (53rd Dist. Ct. Travis County., Tex. Dec. 22, 2017).

### 3.  Standing

Finally, the State Defendants argue that the City does not have standing to bring this case. This argument is easily dispatched. (State Defs.' Mot. Dismiss, Dkt. 37, at 4–7). Article III standing requires (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that a favorable decision will redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The State Defendants argue that the City has not shown any of the three components of standing. (State Defs.' Mot. Dismiss, Dkt. 37, at 4–5). The Court disagrees. As the Court has already found in its order denying the City's Motion for Preliminary Injunction, (Order, Dkt. 12, at 3), the City has pled sufficient facts to demonstrate that the City will lose revenue based on the implementation of SB 1004,[10] the revenue will be lost because of the statute, and an order enjoining SB 1004's implementation would redress that injury.

### B.  12(b)(6): Failure to State a Claim

The Court turns now to the defendants' Rule 12(b)(6) arguments attacking the merits of the City's pre-emption claims. The City argues that a clear reading of the statute and the legislative history indicates that Section 253(c) of the FTA pre-empts SB 1004 because SB 1004 purports to eliminate the authority that 253(c) intended to grant local governments, (*See* Am. Compl., Dkt. 22, ¶¶ 3, 17–26, 47–49), and that Congress wrote Section 332(c)(7) of the FTA with the intention of preserving local zoning authority, including the authority to set time limits for reviewing applications and moratoria if needed during special events, (*See* Am. Compl., Dkt. 22, ¶¶ 3, 21, 48). Defendants argue that neither provision pre-empts SB 1004. (*See* New Cingular Mot. Dismiss, Dkt. 35, at 7–10; ExteNet Mot. Dismiss, Dkt. 36, at 4–10; State Defs.' Mot. Dismiss, Dkt. 37, at 10; Mobilitie Mot. Dismiss, Dkt. 38, at 2–4; T-Mobile Mot. Dismiss, Dkt. 39, at 9–18; Crown Castle Mot. Dismiss, Dkt. 42, at 13–17).

---

[10] Before SB 1004, the City charged an application fee of $1,250 per small cell node permit application and an annual rental fee of $1,500 per year to install a node on a light pole.

1.   47 U.S.C. § 253(c)

Section 253(c) of the FTA reads in full:

**State and local government authority.** Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

47 U.S.C. § 253(c). The Court already reviewed the arguments provided in the motions to dismiss when it denied the City's motion for preliminary injunction. The Court will not repeat those findings in their entirety here, and it refers the parties to that order for a more complete discussion of these issues. (*See* Order, Dkt. 12). It is enough to reiterate here that the text of 253(c) does not reach as far as the City would like:

[Section 253(c)] makes clear that the protection of state and local authority in this arena only shields that authority from federal encroachment. All of the state and local government authority to which it refers is limited by the first clause: "Nothing in this section affects . . . ." This part of the statute does not *grant* any power to state or local governments; it merely makes clear that the Federal Telecommunications Act will not interfere with existing state and local authority to set fair and reasonable compensation. Nothing in the text of the provision suggests, nor can it be plausibly inferred to suggest, that it will protect the right of local governments to set their own rates when a state government mandates otherwise.

(Order, Dkt. 12 at 6-7). Additionally, the plain text of Section 253(c) contemplates a shared authority between state and local governments, expressly preserving both. This reading is inconsistent with the City's proposed interpretation of Section 253(c).

The City argues that the legislative history confirms its reading of Section 253(c). (*See, e.g.,* Resp. Defs.' Mot. Dismiss, Dkt. 48, at 8–10). While the City is correct that the Court may consider legislative history to interpret Congress's intent if the statutory language is ambiguous, *In re Settoon Towing, L.L.C.*, 859 F.3d 340, 352 (5th Cir. 2017), it is also true that "[w]here the statute is so lucid, we need not look to legislative history for further guidance." *Id.* (quoting *Phillips v. Marine Concrete Structures, Inc.*, 895 F.2d 1033, 1035 (5th Cir. 1990)). If a statute's language is unambiguous, courts

often apply the plain language absent some resulting absurdity; "plain statutory language is the most instructive and reliable indicator of Congressional intent." *Settoon Towing*, 859 F.3d at 345 (quoting *Martinez v. Mukasey*, 519 F.3d 532, 543 (5th Cir. 2008)). Here, the statutory language is clear—Section 253(c) does not affirmatively grant any authority to state or local governments.

Nor does Section 253 implicitly pre-empt SB 1004. In general, "federal legislation threatening to trench on the States' arrangements for conducting their own governments should be treated with great skepticism, and read in a way that preserves a State's chosen disposition of its own power, in the absence of the plain statement . . . [required]." *Nixon v. Mo. Mun. League*, 541 U.S. 125, 140 (2004). For a statute to "interpos[e] federal authority between a state and its municipal subdivisions," it must do so in language that is "unmistakably clear." *Id.* There is simply no such clear language in Section 253 suggesting that it intended to prevent states from setting limits on local regulation of telecommunications providers' use of public ROW. There is no affirmative restriction on State power in this section. As nothing has changed on these issues since the preliminary injunction proceedings, the Court's conclusion is the same: Section 253(c) does not pre-empt SB 1004.

### 2.  47 U.S.C. § 332

Next, the City argues that Section 332 pre-empts SB 1004. Here too, the City's arguments have not materially changed since its motion for preliminary injunction. Section 332(c)(7)(B) is a pre-emption clause that contains specific limitations on the authority of state and local governments to regulate the telecommunications sector. Relevant here, Section 332(c)(7)(B)(ii) states that federal law pre-empts state and local authority with respect to the time in which the government must act on a request for authorization to site "personal wireless services facilities." 47 U.S.C. § 332(c)(7)(B)(ii) ("A State or local government shall act [on applications for wireless service siting] within a reasonable

period of time . . . ."). The statute also directs state and local governments to process siting applications without unreasonable delay. *Id.*

As the Court explained in its earlier order, (Dkt. 12, at 8–9), the FCC, in responding to complaints from cellular service providers that state and local governments were taking too long to process siting applications, issued an order interpreting the phrase "reasonable period of time" in Section 332(c)(7)(B)(ii). *See In re Petition for Declaratory Ruling*, 24 FCC Rcd. 13994. That interpretation was upheld by the Supreme Court as a legitimate exercise of the authority delegated by Congress to the FCC. *See City of Arlington v. FCC*, 133 S.Ct. 1863, 1867 (2013). The City contends that Section 332(c)(7) already defined what a "reasonable period of time" is for these purposes, so SB 1004's setting of a *shorter* period than allowed by federal statute is pre-empted by the FTA. (*See* Resp. Defs.' Mot. Dismiss, Dkt. 48, at 10). This argument ignores that fact that the FCC order expressly allowed state or local governments to require review of a permit application in a shorter period of time:

> To the extent existing State statutes or local ordinances set different review periods than we do here, we clarify that out interpretation of Section 332(c)(7) is independent of these statute or ordinances. Thus, where the review period in a State statute or local ordinance is shorter than the 90-day or 150-day review period, the applicant may pursue remedies granted under the State or local regulation . . . .

*In re Petition for Declaratory Ruling*, 24 FCC Rcd. 13994, ¶ 50. In essence, Section 332(c)(7) serves to cap the amount of time to process siting applications; it does not foreclose shorter time requirements. Because Section 332(c)(7) can coexist alongside a state regulation requiring a shorter time period, SB 1004 is not pre-empted by Section 337.

### C.  Leave to Amend

The City does not appear to seek the opportunity to cure the defects the Court has identified in its claims.[1] Out of an abundance of caution, however, the Court will briefly note that leave to

---

[1] The City states: "If the Court finds the City's pleadings do not sufficiently establish facts such as a threat of litigation, the City asks that rather than dismissing the claims, the Court grant the City leave to amend the pleadings to further

amend would not be appropriate here, as the defect in the City's case is not curable by amendment. The general rule is that when a complaint fails to state a claim, a court should generally give the plaintiff an opportunity to amend under Rule 15(a) before dismissing the action with prejudice. "Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (citing *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 675–76 (2d Cir. 1991)). In deciding whether to grant leave, the court "may consider a variety of factors in exercising its discretion, including . . . repeated failures to cure deficiencies by amendments previously allowed . . . and futility of the amendment." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005).

Here, the failing of the City's claims is a purely legal issue—the Federal Telecommunications Act sections at issue do not pre-empt SB 1004 as a matter of law. This is not something that the City could cure through a pleading amendment. Additionally, Defendants identified this problem in the briefing at the preliminary injunction stage, and the City amended its complaint in response to the Defendants' arguments. Because the City has already had an opportunity to amend, and because amendment would be futile, there is no need to grant the City leave to amend.

## IV. CONCLUSION

For the reasons given above, the Motions to Dismiss filed by ExteNet, the State Defendants, Mobilitie, and T-Mobile, (Dkts. 36, 37, 38, 39), are **GRANTED IN PART** and **DENIED in PART**. The motions are **GRANTED** with respect to the argument that the City's amended complaint fails to state a claim on which relief may be granted, and are **DENIED** on all other grounds. The motions filed by New Cingular Wireless and Crown Castle, (Dkts. 35, 42), are

---

plead these facts." (Resp. Defs.' Mot. Dismiss, Dkt. 48, at 12). Presumably, this request refers to the standing and jurisdiction arguments. As the Court rejected these arguments, the basis of the City's request does not exist.

**GRANTED**. As the City has failed to state a claim on which relief may be granted, this case is

**HEREBY DISMISSED WITH PREJUDICE**.

     **SIGNED** on March 25, 2019.

                              _____

                              ROBERT PITMAN
                              UNITED STATES DISTRICT JUDGE